

Wiggin and Dana LLP
One Century Tower
265 Church Street
New Haven, Connecticut 06510
www.wiggin.com

Caroline B. Park
203.498.4317
203.782.2889 fax
cpark@wiggin.com

E-FILED

June 25, 2024

Hon. Robert N. Chatigny
United States District Judge
United States District for the District of Connecticut
Abraham Ribicoff Federal Building
450 Main Street - Room 228
Hartford, Connecticut 06103

Re:   <u>Mitchell Higashi v. GeneDx Holdings, Corp.</u>
      Docket No. 3:24-cv-00815-RNC

Dear Judge Chatigny:

This Firm represents defendant GeneDx Holdings, Corp. ("defendant") in connection with the above-referenced case. We write in accordance with the Pretrial Preferences set forth in Your Honor's Chambers Practices to request that a pre-motion conference be scheduled in anticipation of pursuing a partial motion to dismiss addressing seven of the fourteen counts alleged in the Complaint filed by plaintiff Mitchell Higashi ("plaintiff") for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). This letter will set forth, in brief, the basis of defendant's proposed motion.

   I.   **Counts One and Two**

Counts One and Two of the Complaint purport to allege tort claims sounding in fraud and negligent misrepresentation, respectively. The claims are predicated on allegations that can generally be grouped as follows: (1) statements attributed to defendant's executives generally regarding the financial health of the company, and (2) a failure to disclose to plaintiff information regarding a dispute defendant had with a third party. Plaintiff claims that such statements induced him to resign his position with another company—and forego the associated compensation—to accept a job with GeneDx on September 21, 2021 (Complaint ¶ 9) and thereafter remain employed by GeneDx until he was terminated without cause as part of a reduction in force.

Plaintiff alleges that defendant's statements in this regard were both intentional and negligent. "To establish liability for negligent misrepresentation, a plaintiff must be able to demonstrate by a preponderance of the evidence: '(1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result.'" <u>Stuart v. Freiberg</u>, 316 Conn. 809, 821-22, 116 A.3d 1195 (2015). "A claim of intentional misrepresentation requires the same elements as negligent misrepresentation except that the

plaintiff also must prove that the defendant made the misrepresentation 'to induce the other party to act upon it." Brown v. Otake, 164 Conn. App. 686, 706, 138 A.3d 951 (2016) (internal punctuation marks and citations omitted).

Counts One and Two of the Complaint are ripe for dismissal because plaintiff has not pled sufficient factual, non-conclusory allegations to establish the required elements of either claim.

### a. Alleged Pre-Hire Misrepresentations

According to the Complaint, Plaintiff formally accepted employment with GeneDx on September 21, 2021. (Complaint ¶ 9). He alleges that he was lured into resigning lucrative employment elsewhere and accepting a role with GeneDx because of GeneDx's failure to disclose, during the hiring process, the financial health of the Company's expanded carrier screening (ECS) business, or specifically the existence of a dispute with a third-party regarding billing for ECS testing (Complaint ¶¶ 18, 19, 99.a, 113.a).[1]

Plaintiff expressly alleges that "no statements or quotes related to the financial health of the ECS testing business were disclosed to Plaintiff." (Complaint ¶ 19). He is instead relying on the *omission* of a disclosure regarding a pending dispute and the associated potential financial ramifications of that dispute. Plaintiff claims that defendant's omissions fraudulently induced him to accept employment with defendant because plaintiff would not have left his previous employment if he was aware of defendant's alleged "improper and illegal" business dealings. (Complaint ¶ 99.a, 113.f).

However, plaintiff's claims depend upon the *conclusory* allegation that defendant's conduct was in fact unlawful or improper, apparently relying on allegations of the existence of a dispute to *ipso facto* mean that the Company was in the wrong and had done something improper. Plaintiff cannot support his claims with such conclusory allegations, and his fraud claims should therefore be dismissed. Moreover, as to the fraud claim, he has only conclusory allegations that the failure to disclose a pending dispute with a payer was an intentional omission (*e.g.* Complaint ¶ 97), and that the executives he interviewed with deliberately withheld information about this payment dispute from a candidate for employment in order to entice the candidate to accept employment.

More generally, plaintiff claims that the Chief Financial Officer remarked upon the "strong" growth of the company during an investor call in August 2021, and further expressed confidence that defendant would meet certain long-term goals of the company. Plaintiff's allegation, even if taken as true, fails to establish the first and second required elements of

---

[1] Plaintiff also makes certain references regarding the terms of his offer letter. The offer letter in incorporated by reference into the Complaint, and its terms regarding plaintiff's bonus and equity eligibility speak for themselves. Plaintiff cannot claim reasonable reliance on offer letter terms that, as to the bonus, retain the Board's discretion over the amount of the bonus to be awarded based on its assessment of "Company and individual performance" and, as to the equity award, describe the dollar value *as of the date of the grant*.

either intentional or negligent fraud – that the defendant made a misrepresentation of fact that defendant knew or should have known were false. First, the alleged comments are clearly statements of opinion (i.e., concerning the strength of the company's growth) not statements of fact (e.g., specifying the exact amount of growth or the objective data demonstrating such growth). Second, plaintiff has not and cannot establish that defendant knew or should have known that the alleged statements made during the August 2021 investor call were false. See Scinto v. Shandex Corp., No. CV-18-6086012-S, 2022 WL 1658179, at *20 (Conn. Super. Ct. May 24, 2022)("The misrepresentation must consist of a statement of material past or present fact. . . . Statements of opinion . . . are not actionable. . . reliance on opinions is per se unjustifiable because opinions, unlike facts, do not purport to be incontrovertible.") (internal citations and punctuation marks omitted). As to the fraud claim, plaintiff has alleged no specifics regarding the intent of the executive to dupe plaintiff specifically, nor can he – it strains credulity to even allege that a Chief Financial Officer, speaking in a public forum with investors as the intended audience, was in fact using that platform to compel one individual to accept a job offer.

### b. Alleged Post-Hire Misrepresentations

While thin on details regarding alleged statements that induced him to accept a role with the Company, the Complaint is replete with allegations regarding post-hire statements, and salacious details regarding plaintiff's "discovery" of GeneDx's dispute with a third-party regarding payments. (see, e.g., Complaint ¶¶ 14, 19, 20 - 78). Plaintiff is apparently alleging that he continued his at-will employment longer than he would have otherwise. (Complaint ¶¶ 100, 103, 115).

While the alleged post-hire misrepresentations suffer the same deficiencies as the allegations relied on in support of the pre-hire claims (*i.e.* they are statements of opinion, or not alleged to be false or known to be false, or—as to the fraud claim—not alleged to have been made specifically to induce him), the claims regarding post-hire actions also fail for want of allegations regarding how plaintiff relied on those misrepresentations and the harm plaintiff suffered by virtue of his reliance on the alleged misrepresentations. Plaintiff alleges that he began interviewing (Complaint ¶ 76), which muddies the waters on the alleged post-hire reliance that kept him employed. He was then not relying on the misrepresentations to stay in his current role, as he admittedly began seeking employment elsewhere. He does not allege, for example, that he received an offer elsewhere and turned it down because he was relying on the alleged rosy statements in GeneDx investor calls. Plaintiff alleges some speculative reputational damage, but no specifics as to the pecuniary harm he allegedly suffered by supposedly being lured into not resigning his at-will employment sooner.

For the foregoing reasons, which will be described in much greater detail in defendant's anticipated motion papers, defendant believes Counts One and Two of plaintiff's Complaint are subject to dismissal on a 12(b)(6) motion.

## II. Counts Four, Five, Ten, and Eleven

Counts Four and Five of plaintiff's Complaint assert claims for discrimination based on age in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL") and the

New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 ("NYCHRL"), respectively. Counts Ten and Eleven of plaintiff's Complaint assert claims for discrimination based on race in violation of the NYSHRL and the NYCHRL, respectively.

It is well established that a non-resident plaintiff may only bring a claim under the NYSHRL or the NYCHRL if they can allege facts showing that the impact of the defendant's alleged discriminatory conduct was felt within either the state or the city of New York, respectively. See Hoffman v. Parade Publ'ns., 15 N.Y.3d 285, 289 (2010) (holding that nonresidents of the city and state must plead and prove that the alleged discriminatory conduct had an impact within those respective boundaries); Casinathen v. Terrascend USA Inc., No. 150366/2022, 2022 WL 4110226, at *1-*2 (N.Y. Sup. Ct. Sept. 8, 2022); see also Shiber v. Centerview Partners LLC, No. 21 Civ. 3649 (ER), 2022 WL 1173433, at *4 (S.D.N.Y. Apr. 20, 2022) ("The impact requirement – as applied under the NYCHRL – also applies under the NYSHRL, as the intent of that statute is to protect those who live or work within New York State.").

To plead impact, a plaintiff cannot rely solely on the allegation that the decision to engage in the alleged discriminatory conduct was made in New York. Plaintiff must also show more than occasional interactions with New York employees, or business-related travel to New York. See Pakniat v. Moor, 192 A.D.3d 596, 596-97 (N.Y. App. Div. 2021) ("The fact that the alleged discriminatory acts and unlawful decision to terminate plaintiff's employment occurred in New York is insufficient to plead impact in New York."); Shiber, 2022 WL 1173433, at *3 ("Courts have repeatedly held that a non-resident plaintiff's occasional meetings in or travel to [New York City] are tangential and do not satisfy the impact requirement.") (citing Hoffman, 15 N.Y.3d 291-92 (dismissing a non-resident plaintiff's NYCHRL claims where plaintiff attended quarterly meetings in the city and where the decision to terminate him was made in the city)). Courts have similarly rejected arguments by non-resident plaintiffs that the jurisdictional breadth of either or both statutes should be expanded in light of the increasing prevalence of remote working arrangements in the years since the COVID-19 pandemic. Pakniat, at 597.

Plaintiff admits that he "is a resident of the state of Pennyslvania." (Complaint, ¶ 2). Plaintiff further admits that he "worked remotely in the New York City office . . . from his home in Pennsylvania." Id. Plaintiff alleges that his interactions with defendant's New York-based employees included at least one in-person meeting and otherwise consisted of electronic or telephonic communications. Id. Plaintiff's admissions are fatal to his claims under the NYSHRL and the NYCHRL because they establish that plaintiff is not a resident of either jurisdiction and cannot plead more than the type of tangential connections to either jurisdiction that have been repeatedly held to fall short of establishing requisite impact.

### III. Count Fourteen

Count Fourteen of plaintiff's complaint asserts a claim for intentional infliction of emotional distress against defendant. Plaintiff's claim is supported by the same allegations that are cited in support of his various discrimination claims. (Compare Complaint, ¶¶ 157(a)-(e) with Complaint, ¶¶ 188(a)-(e))).

It is well established that "[l]iability for intentional infliction of emotional distress requires conduct exceeding all bounds of decent society and which is calculated to cause, and does

Hon. Robert N. Chatigny
United States District Judge
June 25, 2024
Page 5

cause, mental distress of a very serious kind. Connecticut courts have narrowly defined the boundaries of extreme and outrageous conduct." Cayo v. Stop & Shop Supermarket Co., No. 3:12cv638 (WWE), 2012 WL 5818862 at *4 (D. Conn. Nov. 14, 2012). Further, in the employment context, "an employer's routine adverse employment action, even if improperly motivated, does not constitute extreme and outrageous behavior unless conducted in an egregious and oppressive manner." Id.

Here, plaintiff alleges that defendant engaged in disparate treatment of employees based on race or age, and that defendant denied plaintiff certain opportunities to meet with executives or speak at company events. Even if plaintiff's allegations are taken as true, and even if defendant's conduct is held to be improperly motivated by discriminatory animus, it is not so outrageous and extreme as to exceed all bounds of decent society. See Calhoun v. Goodwill Industries of Southern New England, Inc., No. CV206104872S, 2021 WL 3609677, at *10 (Conn. Super. Ct. July 26, 2021) (striking plaintiff's intentional infliction of emotional distress claim because it was not sufficiently extreme or outrageous when plaintiff alleged that defendant deliberately refused "to promote her due to her race, and [that] she was forced to work eight consecutive hours without a lunch break.").

Therefore, plaintiff's allegations fail to establish that defendant engaged in conduct that meets the threshold of "extreme and outrageous" conduct required to plead a claim for intentional infliction of emotional distress in the employment context. Consequently, Count Fourteen of plaintiff's Complaint should be dismissed.

IV. Conclusion

For the reasons generally summarized above, defendant is of the view that a partial motion to dismiss as to these seven claims alleged in plaintiff's Complaint is appropriate for Your Honor's consideration.  We therefore respectfully request permission to proceed with this motion.

Respectfully submitted,

*Caroline B. Park*

Caroline B. Park

26871\31\4890-7982-0747.v1