## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MITCHELL HIGASHI, | : | |
| | : | |
| Plaintiff, | : | CIVIL NO. 3:24-cv-00815-MPS |
| | : | |
| v. | : | |
| | : | |
| GENEDX HOLDINGS CORP., SEMA4 | : | |
| OPCO, INC., and GENEDX, LLC | : | |
| | : | |
| Defendant. | : | DECEMBER 6, 2024 |

### MEMORDANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff Mitchell Higashi ("Higashi" or "Plaintiff") accuses his former employer, Defendant Sema4 OpCo, Inc. ("Sema4") and its parent company, Defendant GeneDx Holdings Corp. ("GeneDx") (collectively, "Defendants" or "Sema4") of making various misrepresentations both prior to and during Higashi's employment and terminating his employment for discriminatory reasons based on Higashi's race and age. Plaintiff's common law fraud claims include a claim for fraudulent misrepresentation and inducement (Count One) and for negligent misrepresentation (Count Two). Plaintiff also alleges discrimination based on age under the Age Discrimination in Employment Act ("ADEA") (Count Three), the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL") (Count Four), the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 ("NYCHRL") (Count Five), the Pennsylvania Human Relations Act, Pa. Stat. Ann. Tit. 43 § 951, *et seq*. ("PHRA") (Count Six), and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60(a) ("CFEPA") (Count Seven). Plaintiff further alleges discrimination based on race under 42 U.S.C. § 1981 (Count Eight), Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1) ("Title VII") (Count Nine), NYSHRL (Count Ten), NYCHRL (Count Eleven), PHRA (Count Twelve), and CFEPA (Count Thirteen).

Defendants now move to dismiss Plaintiff's common law fraud claims (Counts One and Two) and Plaintiff's discrimination claims brought under the NYSHRL and the NYCHRL (Counts Four, Five, Ten, and Eleven) for failure to state a cognizable claim for relief. Fed. R. Civ. P. 12(b)(6). Plaintiff's common law fraud claims must be dismissed because Plaintiff has failed to adequately plead the required elements of either cause of action. Plaintiff's claims under the NYSHRL and the NYCHRL must be dismissed because Plaintiff is not a resident of either New York State or New York City and has not sufficiently alleged that the impact of Defendant's alleged wrongful conduct was felt within either jurisdiction.

Plaintiff obtained leave of this Court to file the Second Amended Complaint (the "Complaint") on November 22, 2024. [ECF 48]. Plaintiff included additional allegations in support of his alleged claims under New York City and New York State law. Even as amended, however, Plaintiff's allegations still fail to establish a claim for relief under the NYSHRL or the NYCHRL upon which relief can be granted. Plaintiff made only minor additions in an attempt to bolster his common law fraud claims with additional allegations of fact, and such claims remain insufficient to establish common law fraud claims.

For the foregoing reasons, as more fully articulated below, Defendants' Motion to Dismiss Counts One, Two, Four, Five, Ten, and Eleven should be GRANTED.

## I.    FACTUAL ALLEGATIONS[1]

On September 15, 2021, Sema4 OpCo, Inc.[2] extended an offer of employment to Plaintiff for a Senior Vice President ("SVP") role. (Complaint, ¶¶ 16, 24). The terms of the offer letter

---

[1] Defendants will accept as true the factual allegations set out in Plaintiff's Complaint solely for the limited purposes of this motion to dismiss. Accordingly, the factual recitation included in this motion are drawn exclusively from the Complaint, without regard to the accuracy of Plaintiff's averments.

[2] As referenced in the Complaint, Defendant GeneDx Holdings Corp. was operating under the name "Sema4 Holdings Corp." at the time of Plaintiff's hire, continuing through January 9, 2023. Plaintiff added Sema4 OpCo, Inc. as a named Defendant in this matter on November 22, 2024. Defendants note that Plaintiff was employed by Sema4 OpCo Inc., not its parent company Sema4 Holdings Corp., later changed to GeneDx Holdings Corp.

included a base salary of $390,000 and a "target annual performance bonus" of 35% of his base salary, to be awarded based on "individual performance metrics set forth by the Sema4 Board of Directors," which bonus was to be prorated for the first year. (Complaint, ¶ 16).[3] Plaintiff's compensation package also included the potential receipt of Sema4 stocks and options, subject to Board approval and applicable contractual terms. (Complaint, ¶ 26). In addition, Plaintiff would be eligible to participate in Sema4's annual equity program upon the program's creation by Sema4 and approval by the Board. Sema4's targeted award under this program was estimated to be approximately $500,000, subject to the equity incentive plan and annual grant award agreement terms approved by the Board. (Complaint, ¶ 27).

Plaintiff accepted the offer and commenced employment with Sema4 on or about October 11, 2021.  (Complaint, ¶ 16).  By leaving his higher-paying position with his prior employer to join Sema4, Plaintiff was ineligible to receive an annual bonus from his previous employer because he resigned from that position to work for Sema4 before the end of the calendar year. (Complaint, ¶ 24).

Plaintiff alleges that, though he is a resident of the State of Pennsylvania, he "worked remotely in the New York City office and Connecticut offices from his home in Pennsylvania." (Complaint, ¶ 2). Plaintiff further alleges that he "had daily contacts and contacts multiple times a day with . . . Defendant's New York City office, via various communications and Zoom meetings and team members, [and attended in person meetings based out of the New York City office." (Complaint, ¶ 2). Plaintiff also alleges that he worked with individuals who were either based in

---

[3] On a motion to dismiss, a "complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Menaker v. Hofstra Univ., 935 F.3d 20, 28 (2d Cir. 2019) (quoting Chambers v. Time Warner, 282 F.3d 147, 152 (2d Cir. 2002) (considering, on review of ruling on motion to dismiss, correspondence referred to in complaint, "including those portions not specifically quoted"). The Complaint incorporates by reference the offer letter, at times referred to as an "employment agreement." (Complaint ¶¶ 26, 27, 128(e), 129, 132, 140, 142(f)) (attached as Exh. A).

or had connections to New York (Complaint, ¶¶ 16, 112, 117-18) and that Sema4 had operations in New York during his period of employment (Complaint, ¶¶ 21, 60). Plaintiff also claims that aspects of his work were subject to various regulations, including those applicable to New York (Complaint, ¶¶ 20, 116). Specifically, Plaintiff alleges that "[o]n September 21st, [sic] 2023, Plaintiff attended a meeting called 'All Hands' at the [sic] GeneDx's new New York [city] office. . . ." (Complaint, ¶ 111). Plaintiff clarifies that "[d]uring 2023 (January-October) Plaintiff's attendance was required for at least three separate events: Strategic Planning (January), Leadership Summit (June), and All-Hands (September)." (Complaint, ¶ 84). Plaintiff further alleges that he "visited GeneDx's headquarters in Stamford, Connecticut at least three times over the past twelve months." (Complaint, ¶ 114). Plaintiff amended his Complaint to further claim that "[u]pon information and belief, [Defendants] ma[de] major termination decisions from Defendant's New York office." (Complaint, ¶ 109).

According to Plaintiff, after he began employment with Sema4 he came to learn of a payment dispute the company had with a third-party payer, the existence of which was not disclosed to Plaintiff during pre-hire discussions. Plaintiff claims that the financial implications of that dispute were not mentioned in pre-hire discussions with the then-CEO and CFO, and were inconsistent with the healthy financial projections relayed by the then-CFO in an investor call in August 2021, and that he relied on that information when making his decision to accept Sema4's offer of employment in September 2021. (Complaint, ¶¶ 128(a), 142(b)).

Plaintiff further claims that the payment dispute was the result of Sema4's allegedly improper billing practices, and that he discovered this fraudulent scheme several months after joining the company. (Complaint, ¶¶ 42, 65). He alleges that the company, through its executives, continued to project a rosy financial picture, though the implications of the dispute with payers

related to the company's billing practices could be dire. Plaintiff also claims that he became disillusioned with the company's commitment to its campaign to "End the Diagnostic Odyssey," and came to believe that the company prioritized profits at the expense of those suffering from rare diseases. (Complaint, ¶¶ 128(g), 142(h)).

Notwithstanding these discoveries, Plaintiff did not resign his employment, though at some unspecified date he began interviewing elsewhere. (Complaint, ¶ 95). Sema4 had several rounds of employee layoffs, including a layoff on October 30, 2023 that included Plaintiff. (Complaint, ¶ 100). Plaintiff alleges that his inclusion in that layoff was motivated by his age (54 years old at the time of termination), and his race (Asian and of Japanese ethnicity). (Complaint, ¶ 123). In support of those claims, Plaintiff alleges that a higher proportion of senior employees over the age of 40 were laid off as compared to younger employees, and further that Asian employees were disproportionately impacted by the layoffs. He also alleges that his access to key people and opportunities was limited or taken from him while he and his team were overloaded with work, all because he is a middle-aged Asian man. (Complaint, ¶¶ 149(a)-(d), 156(a)-(d), 168(a)-(d), 175(a)-(d), 186(a)-(e), 193(a)-(e), 205(a)-(e), 212 (a)-(e)).

## II.      LAW & ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "'A claim has factual plausibility when the [P]laintiff pleads factual content that allows the court to draw the reasonable inference that the [D]efendant is liable for the misconduct alleged.'" Arditi v. Lighthouse Int'l, 676 F.3d 294, 301 (2d Cir. 2012) (quoting Iqbal, 556 U.S. 662 (2009)). "In reviewing the sufficiency of a complaint, [courts] accept only its factual allegations, and the

reasonable inferences that can be drawn therefrom, as true." Krys v. Pigott, 749 F.3d 117, 128 (2d Cir. 2014). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," id. (quoting Iqbal, 556 U.S. at 678), or "to accept as true allegations that are wholly conclusory." Id.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Indeed, "[a] complaint will not survive a motion to dismiss if it relies on 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,' or if 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" Lynch v. City of New York, 956 F.3d 67, 75-76 (2d Cir. 2020) (quoting Iqbal, 129 S. Ct. at 1949-50); CVS Pharmacy, Inc. v. Forest Lab'ys Inc., 101 F.4th 223, 235 (2d Cir. 2024).

For the reasons detailed below, the facts alleged in the Complaint, even if taken as true, fail to state a viable claim for common law fraud (Counts One and Two), age discrimination under the NYSHRL (Counts Four and Ten), and race discrimination under the NYCHRL (Counts Five and Eleven). No matter how liberally construed, the foregoing counts of the Complaint fail to state a cognizable claim against Defendants, and their motion to dismiss should be granted.

    **A.**    **Plaintiff Cannot Sustain a Claim Under the NYSHRL or the NYCHRL.**

Plaintiff asserts discrimination claims based on his age and his race under the NYSHRL and the NYCHRL. Plaintiff's claims under both statutes, however, must be dismissed because Plaintiff does not allege that he was a resident of either New York state or New York City, and has not otherwise adequately alleged that the alleged discriminatory conduct had an impact within the state or city of New York. See Hoffman v. Parade Publ'ns., 15 N.Y.3d 285, 289 (2010) (holding that nonresidents of the city and state must plead and prove that the alleged discriminatory conduct

had an impact within those respective boundaries); <u>Casinathen v. Terrascend USA Inc.</u>, No. 150366/2022, 2022 WL 4110226, at *1-*2 (N.Y. Sup. Ct. Sept. 8, 2022).

In his Memorandum of Law (ECF 39) in Opposition to the Motion Dismiss previously filed by Defendant GeneDx (ECF 26), Plaintiff acknowledges that "[a] nonresident of the State of New York may invoke the protections of the NYSHRL **having shown that the discriminatory act complained of had an impact within the boundaries of the State**." (ECF 39, at *7) (emphasis added). Even as nominally amended, however, Plaintiff's slim allegations regarding interactions with New York State or City-based co-workers, and his infrequent travel to Defendant's New York City office, remains insufficient to establish that the alleged discriminatory act(s) had an impact within either New York State or New York City.

It is well established that a plaintiff cannot sustain a claim under the NYSHRL or the NYCHRL if they were not a resident of either jurisdiction at the time of the alleged discriminatory conduct and if the plaintiff fails to allege that the conduct had any impact in either New York State or New York City. <u>Pakniat v. Moor</u>, 192 A.D.3d 596, 596-97 (N.Y. App. Div. 2021); <u>see</u> <u>Shiber v. Centerview Partners LLC</u>, No. 21 Civ. 3649 (ER), 2022 WL 1173433, at *4 (S.D.N.Y. Apr. 20, 2022) ("The impact requirement – as applied under the NYCHRL – also applies under the NYSHRL, as the intent of that statute is to protect those who live or work within New York State.").

"Courts have repeatedly held that a non-resident plaintiff's occasional meetings in or travel to [New York City] are tangential and do not satisfy the impact requirement." <u>Shiber</u>, 2022 WL 1173433, at *3-*4; <u>see</u> <u>Hoffman</u>, 15 N.Y.3d 291-92 (dismissing a non-resident plaintiff's NYCHRL claims where plaintiff attended quarterly meetings in New York City and where the decision to terminate plaintiff's employment was made in New York City); <u>see also</u> <u>Pedroza v.</u>

Ralph Lauren Corp., No. 19-cv-08639 (ER), 2020 WL 4273988 (S.D.N.Y. July 24, 2020) (dismissing a nonresident's claims under the NYCHRL and the NYSHRL where the plaintiff could not show more than telephonic communications with New York-based co-workers or occasional travel to attend in-person meetings). "The Second Circuit has also rejected arguments that impact can be established by interactions with people in New York while the plaintiff is elsewhere, as 'the impact of the employment action must be felt *by the plaintiff* in the city.'" Id. at *4 (quoting Vangas v. Montefiore Med. Ctr., 823 F.3d 174, 183 (2d Cir. 2016)).

Here, Plaintiff admits that he "is a resident of the State of Pennsylvania" and worked remotely from his home. (Complaint, ¶ 2). Plaintiff claims that he had "daily" interactions with employees working in Defendant's New York City office. (Complaint, ¶ 2). Plaintiff specifies that attended in person meetings based out of the New York City office" (Complaint, ¶ 2), and otherwise seems to rely on allegations regarding his contact with New York-based coworkers by Zoom or phone, or collaboration on specific aspects of a project (e.g., ensuring compliance with regulatory requirements, including those applicable to New York). (Complaint, ¶¶ 2, 112). Plaintiff amended his Complaint to specify the date(s) of three specific meetings he attended in New York (Complaint, ¶¶ 84, 85, 99, 111, 118), and speculate "[u]pon information and belief" that "major termination decisions" were made from Defendants' New York office. (Complaint, ¶ 109). Significantly, however, Plaintiff does not even speculate that the decision which resulted in his own termination from employment happened in New York. Even if he could, however, such contacts to New York State or New York City still would not satisfy the impact requirement of the NYSHRL and NYCHRL.

Plaintiff's allegations fall squarely within the category of claims by non-resident plaintiffs that have been rejected by the state and federal courts of New York. See Hoffman, 15 N.Y.3d at

291-92 (dismissing a non-resident plaintiff's NYCHRL claims where plaintiff attended quarterly meetings in New York City and where the decision to terminate plaintiff's employment was made in New York City); Shiber, 2022 U.S. Dist. LEXIS 72710, at *4 ("To be sure, the Syeed court said that for purposes of the impact test, a failure to hire or promote case is distinct from a discriminatory termination case. . . . The New York high court noted that the plaintiff in Hoffman was not a New York inhabitant and did not seek to become one. Instead, the plaintiff was a Georgia resident who worked in Georgia and wished to retain his Georgia employment. The court contrasted that situation with a nonresident who engaged in affirmative conduct to obtain an actual job opportunity based in New York City or State.") (internal citations omitted). Plaintiff's allegation that his remote work from his home in Pennsylvania qualifies as work performed in New York similarly fails for the reasons discussed in the Pakniat decision. Notably, the Complaint is utterly devoid of allegations supporting the notion that the impact of Defendant's alleged behavior was felt within the State or City of New York.

Plaintiff does claim that he worked with individuals who were located in New York, including on specific issues (e.g., compliance with New York regulations), but allegations such as these have repeatedly been held as insufficient to establish requisite impact under the NYSHRL and NYCHRL. E.g., Trotter v. National Football League, No. 23-cv-8055 (JSR), 2024 WL 2952637, at *13 (S.D.N.Y. June 12, 2024) (dismissing NYSHRL and NYCHRL claims brought by a non-resident plaintiff who "tr[ied] to satisfy the impact requirement [by] alleg[ing] that (1) the NFL league office is located in New York City, (2) decisions related to [plaintiff]'s employment were made in New York City, and (3) [plaintiff] worked in New York City and stayed overnight in New York city during his employment for the NFL."); Wolf v. Imus, 96 N.Y.S.3d 54, 55 (N.Y. App. Div. 2019) (affirming the trial court's dismissal of "plaintiff's age discrimination

claims brought under the [New York] City and State Human Rights Laws, because the impact on plaintiff from the termination of his employment occurred in Florida, where he lived and worked.").

Courts have similarly rejected arguments by non-resident Plaintiffs that the jurisdictional breadth of either or both statutes should be expanded in light of the increasing prevalence of remote working arrangements in the years since the COVID-19 pandemic. See Pakniat, at 597 ("In arguing that the statutes should reach discriminatory conduct that occurs in New York even if the impact is felt by an out of state worker, Plaintiff points to the increase in remote working arrangements since the Court of Appeals decided Hoffman [before the COVID-19 pandemic]. . . . Certainly, the electronic tools that enable this new expanded workplace can be conduits for discriminatory conduct. . . . While these arguments have force, the clear directive of Hoffman bars this Court from expanding the jurisdictional breadth of either statute to encompass behavior such as that alleged in the complaint.").

In his Opposition to Defendant GeneDx's prior Motion to Dismiss, Plaintiff cites additional precedent acknowledging that the denial of an opportunity to work in New York State or New York City can satisfy the NYSHRL and NYCHRL impact requirement. (See ECF 39 at *8). However, Plaintiff's Complaint does not allege any facts to show that he "pursue[d] an actual city-or-state-based job opportunity" that Defendants denied. See Spindell v. Kroll, LLC, No. 23-CV-9961 (GHW) (JW), at*8 (S.D.N.Y. Aug. 15, 2024) (dismissing nonresident Plaintiff's claims under the NYSHRL and NYCHRL in light of decisions by "the Second Circuit and New York Court of Appeals [which] held that non-residents must pursue 'an actual city-or-state-based job opportunity" which cannot be satisfied by conclusory allegations) (citing Syeed v. Bloomberg L.P., 41 N.Y.3d 446, 452 (2024)).

10

Plaintiff has added an allegation—upon information and belief—that the CEO, CFO and VP of HR were making termination decision from the New York office. (Compl. ¶ 109). But a plaintiff's allegation "that the alleged discriminatory acts and unlawful decision to terminate Plaintiff's employment occurred in New York is insufficient to plead impact in New York." Pakniat, at 597.

Plaintiff's allegations regarding occasional contacts with New York City and New York State, despite now clarifying the date and general purpose of a handful of irregular in-person meetings or projects as amended, remain insufficient to establish that the impact of Defendants' alleged discriminatory act(s) were felt within either New York State or New York City. See Smith v. Vera Institute of Justice, Inc., No. 21 CV 6439 (DG) (CLP), 2023 WL 11879682, at *11 (E.D.N.Y. Aug. 11, 2023) ("Under the impact analysis, a nonresident plaintiff's contact with New York must not be simply tangential **such as a non-resident plaintiff's occasional meetings in or travel to New York**. Instead, in order **to be relevant to the impact analysis, plaintiff's contact with New York should be directly related to the alleged discrimination suffered**.") (emphasis added); Meilus v. Restaurant Opportunities Ctr. United, Inc., No. 21-cv-02554 (CM), 2021 WL 4868557, at *11 (S.D.N.Y. Oct. 15, 2021) (rejecting a non-resident plaintiff's argument that her attendance at a mandatory event in New York, where alleged discriminatory conduct occurred, was sufficient to demonstrate impact under the NYSHRL because "the allegations about what occurred at the event in New York involve general attitudinal discrimination toward African Americans, but do not include any discriminatory actions specifically directed toward plaintiff herself.") (internal punctuation marks omitted).

Therefore, Plaintiff has not and cannot establish that he is a resident of either New York State or New York City, or that the impact of Defendant's conduct was felt within the boundaries

of either jurisdiction. Consequently, his discrimination claims under the NYCHRL and the NYSHRL must fail and the corresponding counts of his Complaint should be dismissed.

### B.       Counts One and Two:  Intentional and Negligent Misrepresentation

Counts One and Two of the Complaint allege tort claims sounding in fraud and negligent misrepresentation, respectively.  Both claims are predicated on allegations regarding statements— or omission(s)—attributed to Defendants' executives generally regarding the financial health of the company, ability to fund Plaintiff's anticipated work, and the company's mission both before and after Plaintiff accepted Sema4's offer of employment. Generally speaking, "[f]raud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed."  Reville v. Reville, 312 Conn. 428, 441, 93 A.3d 1076 (2014).  Fraud can be accomplished negligently or intentionally, and here Plaintiff seeks relief on both theories.  Similar, but not identical, elements of proof apply to Plaintiff's claims for negligent misrepresentation and fraudulent misrepresentation.

As to the former, "[o]ur Supreme Court has long recognized liability for negligent misrepresentation.  The governing principles are set forth in § 552 of the Restatement Second of Torts [1977]: One who, in the course of his business, profession or employment supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.  The Plaintiff need not prove that the representations made by the Defendants were promissory.  It is sufficient that the representations contained false information.  There must be justifiable *reliance* on the misrepresentation for a Plaintiff to recover damages."  Bellsite Development, LLC v. Town of Monroe, 155 Conn. App. 131, 151, 107 A.3d 1028 (2015)(emphasis in original).

"To establish liability for negligent misrepresentation, a Plaintiff must be able to demonstrate by a preponderance of the evidence: '(1) that the Defendant made a misrepresentation of fact (2) that the Defendant knew or should have known was false, and (3) that the Plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result.'" Stuart v. Freiberg, 316 Conn. 809, 821-22, 116 A.3d 1195 (2015). In regard to the second element, "[t]he correct standard is whether [Defendant] knew, or should have known, [its] statements were untrue *at the time they were made*. It is not enough to simply present evidence of a statement of present intention that, in retrospect, did not come to fruition. Rather, the Plaintiff must present evidence that indicates the statement was false when made." Bellsite Development, LLC, 155 Conn. App. at 152 (emphasis in original).

"A claim of intentional misrepresentation requires the same elements as negligent misrepresentation except that the Plaintiff also must prove that the Defendant made the misrepresentation 'to induce the other party to act upon it.'" Brown v. Otake, 164 Conn. App. 686, 706, 138 A.3d 951 (2016). Thus, "'[t]he essential elements of a cause of action in fraud are: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury. All of these ingredients must be found to exist; and the absence of any one of them is fatal to recovery.'" Saggese v. Beazley Co. Realtors, 155 Conn. App. 734, 752, 109 A.3d 1043 (2015).

"Under the first element, the general rule is that a misrepresentation must relate to an existing or past fact. Connecticut courts have long interpreted 'statement of fact' to exclude statements of opinion and promises to act in the future unless the promisor had a present intention not to fulfill that promise. To satisfy the second element of a fraudulent misrepresentation claim, a Plaintiff

must allege that the party making the statement of fact knew it was false at the time it was made. Finally, 'there must be justifiable reliance on the misrepresentation for a Plaintiff to recover damages.'" Trefoil Park, LLC v. Key Holdings, LLC, No. 3:14-CV-00364 (VLB), 2016 WL 837920, at *5 (D. Conn. Mar. 3, 2016).

Furthermore, under Rule 9(b) of the Federal Rules of Civil Procedure, "a party [alleging fraud] must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "To satisfy this rule, a plaintiff must allege 'the time, place, speaker, and sometimes even the content of the alleged misrepresentations.' Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir. 1986); Harsco Corp. v. Segui, 91 F.3d 337, 347 (2d Cir. 1996) (observing that when a complaint includes a claim of fraud, 'it must (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent' (citations omitted)). 'Where there are multiple defendants, Rule 9(b) requires that the plaintiff allege facts specifying each defendant's contribution to the fraud.' Alnwick v. European Micro Holdings, Inc., 281 F. Supp. 2d 629, 639 (E.D.N.Y. 2003)." Chima Enter. Inc. v. Chubb Nat'l Ins. Co., No. 3:23-CV-1331 (VAB), 2024 WL 4349034, at *11 (D. Conn. Sept. 30, 2024).

### i.  **Plaintiff Cannot Sustain a Claim for Fraud**

Here, Plaintiff cites to nearly identical lists of alleged statements and conduct by Defendants in support of both his Fraudulent Misrepresentation and Inducement Claim (Count One) and his Negligent Misrepresentation Claim (Count Two).[4] The allegations cited by Plaintiff as to the former claim fail to satisfy any of the required elements: i.e., that (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it;

---

[4] Compare Complaint, ¶¶ 128(a)-(f) with Complaint, ¶¶ 142(a)-(g); see note 4 supra.

(3) it was made to induce the other party to act on it; and (4) the latter did so act on it to his injury. Datto, Inc. v. Braband, 856 F. Supp. 2d 354, 379 (D. Conn. 2012). Plaintiff has failed to plead with the specificity required to sustain a claim for fraud under both Fed. R. Civ. P. 9(b) and Connecticut common law.

1. **Alleged Fraudulent Statements Leading up to Acceptance of Employment Offer**

Plaintiff alleges that he was fraudulently induced to accept the offer of employment with Sema4 on September 21, 2021. (See Complaint ¶¶ 25, 128(a)-(g), 142(a)-(h)). Specifically, Plaintiff alleges that he was lured into resigning lucrative employment elsewhere and accepting a role with Sema4 because of Defendants' failure to disclose, during the hiring process, the financial health of the company's expanded carrier screening (ECS) business, or specifically the existence of a dispute with a third-party regarding billing for ECS testing. (See Complaint ¶¶ 34, 35, 128(a), 142(a)).

As amended, Plaintiff's Complaint supplements with just one further alleged inducement: that during the hiring process, he was told the company was flush with cash and he would have the team and budget necessary to do his work. (See Compl. ¶¶ 25, 105, 128(c), 142(d)). He alleges that "[p]rior to his hiring, Plaintiff was told there was cash to fund his work only to be denied the requested budget he needed again and again." (Compl. ¶¶ 128(c), 142(d)). These negligible amendments to the Complaint do not remedy the fatal deficiencies in Plaintiff's claims.

Indeed, Plaintiff's claims must fail, because he cannot establish that these alleged pre-hire comments regarding the financial health of the company were *made as a statement of fact*. Indeed, Plaintiff admits that, before his hire, "no statements or quotes related to the financial health of the ECS testing business were disclosed to Plaintiff." (Complaint ¶ 35). He is instead relying on the *omission* of a disclosure regarding a pending dispute with a third-party payer and the associated

speculative financial ramifications of that dispute. In other words, Plaintiff claims he would not have left his previous employment if Defendants had disclosed the alleged "improper and illegal" business dealings. (Complaint ¶¶ 128(f), 142(g)).

Plaintiff's reliance on Defendants' alleged omission is unavailing, however, for several reasons. First, the alleged omission relied upon by Plaintiff is necessarily not a statement of fact. Second, Plaintiff's claims depend upon the conclusory allegation that Defendants' conduct was in fact unlawful or improper, apparently relying on allegations of the existence of a dispute to *ipso facto* mean that the Company was in the wrong and had done something improper. Plaintiff cannot support his claims with such conclusory allegations, and his fraud claims should therefore be dismissed for want of non-conclusory allegations that a false representation was made as a statement of fact.

Moreover, Plaintiff has only conclusory allegations that the failure to disclose a pending dispute with a payer was an intentional omission (*e.g.* Complaint ¶ 126), and that the executives he interviewed with deliberately withheld information about this payment dispute from a candidate for employment in order to entice the candidate to accept employment. He offers no specific allegations whatsoever to support the notion that, in not discussing a third-party dispute with Plaintiff as a potential new hire, any particular executive was doing so with the intent to dupe Plaintiff into accepting employment with the Company.  In other words, Plaintiff's allegations fail to establish the requisite elements of fraud pertaining to the Defendant's actual or reasonable knowledge of the falsity of the alleged statement, and of the Defendant's actual intent to induce specific action by Plaintiff. See Novafund Advisors, LLC v. Capitala Grp., LLC, No. 3:18-cv-1023 (MPS), 2020 WL 230089 (D. Conn. Jan. 14, 2020) ("The Second Circuit has noted that [Federal Rule of Civil Procedure] 9(b) requires fraud Plaintiff to plead not only the particular

'circumstances of the fraud' – the who, what, where, when and why of the false statements – but also 'the Defendant's mental state.' 'Though mental states may be pleaded generally, Plaintiffs must nonetheless allege facts that give rise to a strong inference of fraudulent intent.'") (quoting Lorely Fin. (Jersey) No. 3 Ltd. V. Wells Fargo Sec., LLC, 797 F.3d 160, 171 (2d Cir. 2015) (internal punctuation omitted)).

As to the allegation that Plaintiff was told in the hiring process that he would have the team and the cash needed to support his work with Sema4 (Complaint, ¶¶ 25, 128(c), 142(c)), Plaintiff does not even allege that the statements were false at the time they were made – rather, he only alleges that his budget requests were later denied. He passively alleges that he was promised the necessary budget, staying silent as to who supposedly made such promise. Indeed, he has no allegations whatsoever as to the identity of the individual speaker or speakers who supposedly duped him into accepting the position with promises of a budget, let alone the specifics of when and where the statements were made.

The other alleged pre-hire statements relied upon by Plaintiff similarly fail to establish the requisite elements.[5] Indeed, Plaintiff claims that the Chief Financial Officer remarked upon the "strong" growth of the company during an investor call in August 2021, and further expressed confidence that the company would meet certain long-term goals of the company. Plaintiff's allegation, even if taken as true, fails to establish the first and second required elements of either intentional or negligent fraud – that the Defendants made a misrepresentation of fact that Defendants knew or should have known were false. These alleged comments are clearly statements

---

[5] Plaintiff makes reference to Defendants' alleged statements about Plaintiff's opportunity to work with Mount Sinai and have access to its data. (See Complaint, ¶¶ 25, 59, 128(d), 142(d)). Plaintiff's allegations in this regard similarly fail to establish the requisite elements of fraudulent inducement. Indeed, Plaintiff does not even allege—let alone support with specific facts—that Defendants knew that Mount Sinai would ultimately not permit Defendants and its employees, including Plaintiff, from accessing this data or collaborating on the project in question, let alone that, with that knowledge, Defendants nonetheless let Plaintiff believe he would have access to Mount Sinai's data with fraudulent intent.

of opinion (i.e., concerning the strength of the company's growth) not statements of fact (e.g., specifying the exact amount of growth or the objective data demonstrating such growth). Second, Plaintiff has not and cannot establish that Defendants knew or should have known that the alleged statements made during the August 2021 investor call were false. See Scinto v. Shandex Corp., No. CV-18-6086012-S, 2022 WL 1658179, at *28 (Conn. Super. Ct. May 24, 2022)("The misrepresentation must consist of a statement of material past or present fact. . . . Statements of opinion . . . are not actionable. . . reliance on opinions is per se unjustifiable because opinions, unlike facts, do not purport to be incontrovertible.") (internal citations and punctuation marks omitted).

As to the fraud claim, Plaintiff has alleged no specifics regarding the intent of the executive to lure Plaintiff specifically, nor can he – it strains credulity to even allege that a Chief Financial Officer, speaking in a public forum with investors as the intended audience, was in fact using that platform to compel one individual to accept a job offer. See Herzfield v. JP Morgan Chase Bank, No. 07 Civ. 9439 (DLC), 2008 WL 5210992, at *3 (S.D.N.Y. Dec. 15, 2008) ("Although a party has a duty to disclose information if it has made 'a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party,' or if it 'possesses superior knowledge, not readily available to the other,' this duty arises only when a party becomes aware that another is 'operating under a mistaken perception of a material fact.'") (quoting Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V., 68 F.3d 1478, 1484 (2d Cir. 1995)); Roberts v. Bennaceur, No. 3:12-cv-01222 (JAM), 2015 WL 1471889, at *20 (D. Conn. Mar. 31, 2015) (explaining that, pursuant to Federal Rule of Civil Procedure 9(b), a plaintiff asserting a claim for fraud must allege "facts that give rise to a strong inference of fraudulent intent, which may include either (a) facts showing that Defendants had both motive and opportunity to commit fraud, or (b) facts constituting

strong circumstantial evidence of conscious misbehavior and recklessness" (internal citations and punctuation marks omitted)).

Plaintiff also makes certain references regarding the terms of his offer letter, incorporated by reference into the Complaint and attached hereto as Exhibit A. Plaintiff cannot claim reasonable reliance on an offer letter for at-will employment that, as to the terms of the bonus, retains the Board's discretion over the amount of the bonus to be awarded based on its assessment of "Company and individual performance" and, as to the equity award, describe the dollar value *as of the date of the grant*, and which amount would only become due to Plaintiff after the four-year vesting period. (Complaint ¶ 128(e)). The fact that Defendants described a potential additional form of compensation in the offer letter that could become available to Plaintiff under certain circumstances is neither a statement of fact, nor a known falsehood intended to induce Plaintiff to accept or continue employment. Rather, it was a description of an additional form of compensation that Plaintiff never became eligible to receive.

Finally, Plaintiff has failed to allege with requisite particularity that he was fraudulently induced by Defendant's alleged pre-hire statements *to his detriment*. Plaintiff alleges that he was fraudulently induced to resign his previous position of employment, thus losing out on a bonus and equity compensation he would have received if he had continued his prior employment position. (Complaint, ¶¶ 29, 129 – 133). Plaintiff's claim must fail, however, because the claimed damages are entirely speculative: Plaintiff's prior employment was presumably at-will, and Plaintiff thus could have been terminated by his prior employer at any time, including before earning the equity or bonus. See Leisure Resort Tech., Inc. v. Trading Cove Assocs., 277 Conn. 21, 36-38, 889 A.2d 785, 795 (2006) (finding, in the context of an allegedly fraudulently induced sale of property, damages too speculative when the claimed value remained subject to

contingencies that had not yet been met as of the date of the claimed reliance).  He was not entitled to such compensation or benefits at the time of his alleged reliance on Defendants' statements. Plaintiff's conclusory speculation that he would have continued to receive future compensation and benefits from his prior employer does not suffice – presumably Plaintiff could have been terminated from that position at any time, and admits he was only eligible to receive the bonus if he remained employed through the end of the calendar year (Complaint, ¶ 24) and the equity grant if he was still employed in March or April of 2022.  (Complaint, ¶ 29).

Consequently, Plaintiff's allegations fail to establish the but for causation required to plead a viable claim for fraudulent inducement. For the foregoing reasons, Plaintiff's fraud claims based on Defendants' alleged pre-hire statements (or omissions) fail to satisfy the required elements of a claim for fraudulent inducement and must be dismissed.

2. **Alleged Fraudulent Statements During Plaintiff's Employment**

The Complaint is replete with allegations regarding Defendant's alleged post-hire statements that caused him to continue his employment with the company, and salacious details regarding Plaintiff's "discovery" of Sema4's dispute with a third-party regarding payments.  (See, e.g., Complaint ¶¶ 30, 35, 36 - 99).   Though he concedes that he was aware of the full scope of the financial risk supposedly posed by the payer dispute within the first six months of his employment (Complaint ¶ 65), Plaintiff is nonetheless apparently claiming that he remained employed with Sema4 longer than he otherwise would have because of alleged fraudulent misrepresentations made after his start date.  While the alleged post-hire misrepresentations suffer the same deficiencies as the allegations relied on in support of the pre-hire claims (*i.e.* they are statements of opinion, or not alleged to be false or known to be false, or—as to the fraud claim— not alleged to have been made specifically to induce him with fraudulent intent), the claims

regarding post-hire actions also fail for want of allegations as to how Plaintiff relied on those misrepresentations and the harm Plaintiff suffered by virtue of his reliance on the alleged misrepresentations. Indeed, the operative Complaint alleges that Plaintiff was compelled to remain employed first and foremost for "for stability for his family and to help his team to navigate the turmoil caused by the GeneDx leadership team." (Complaint ¶ 96).

His employer's mission to "End the Diagnostic Odyssey" is added as a secondary reason that allegedly compelled him to stay with the Company. (Complaint ¶ 96). Plaintiff alleges that he "believed in their campaign to 'End the Diagnostic Odyssey' only to discover that the only cause they held dear was profit. If Plaintiff was aware of this before he joined, he would have remained employed with his prior employer and continued to obtain bonus and equity vesting." (Complaint ¶ 128(g)). Plaintiff's allegation establishes only that he was inspired by a company initiative announced by Sema4 before becoming disillusioned by his subsequent realization that Sema4 (a private and public-traded company) was primarily motivated by profit. The mission to 'End the Diagnostic Odyssey' is not mutually exclusive of a goal to turn a profit and Plaintiff's reference to this mission statement does not constitute a misrepresentation or fraudulent misstatement of material, presently known fact intended to induce Plaintiff to take action that caused injury. He does not even bother to offer any specifics as to who made statements regarding the mission, and whether their intent at the time they spoke of a company-wide mission was to specifically induce one individual to join or remain with the Company.

Plaintiff also claims that, "upon joining [the company]" he was informed that "[d]efendant had been fully vetted by the SEC during the SPAC/IPO process and then presented an optimistic future for the business without mentioning a known, pre-existing and fundamental problem with the way they billed payers." (Complaint ¶ 128(b)). This alleged comment also is not a

21

misrepresentation or misstatement of *known fact*: Defendant's non-disclosure of a then-active payment dispute has nothing to do with Defendant's factual statement regarding the SEC's vetting, and Defendant's alleged presentation of an "optimistic future for the business" is clearly an opinion rather than a statement of fact.

Moreover, Plaintiff has not pled how this alleged comment induced Plaintiff to continue his employment with Sema4. In fact, he admits that he began interviewing, which reveals that he did not, in fact, rely on the alleged misrepresentations in deciding to remain in Sema4's employ. (Complaint ¶¶ 95, 97). Plaintiff alleges that he began interviewing before his employment with Sema4 was terminated. (Complaint, ¶ 95). This allegation substantially undermines his alleged post-hire reliance on Defendant's statement(s) (or omissions) that allegedly caused him to continue his employment with Defendant. As of the time Plaintiff began interviewing, he was then not relying on the misrepresentations to stay in his current role. He does not allege, for example, that he received an offer elsewhere and turned it down because he was relying on the alleged rosy statements in Sema4 investor calls.

Finally, Plaintiff's speculative, conclusory allegations regarding his potential future difficulties in securing comparable employment do not qualify as evidence of an actual injury that can be causally linked to Defendant's alleged comment(s). Plaintiff alleges some speculative reputational damage, but no specifics as to the pecuniary harm he allegedly suffered by supposedly being lured into not resigning his at-will employment sooner.[6] He speculates that his reputation has been tarnished by virtue of his association with Sema4, but offers no specifics to demonstrate that—because he relied on Sema4's alleged representations—he is now facing difficulty in the job market because of his time with Sema4 rather than any other factor.

---

[6] The amendments to the Complaint add Plaintiff's estimate of the pecuniary harm associated with his termination (Complaint, ¶ 122), but do not rectify the issue of the lack of pecuniary harm allegedly suffered by not resigning.

In addition, Plaintiff cites to the company's alleged continued non-disclosure of alleged "improper and illegal billing practices." (Complaint, ¶ 128(f)). However, Plaintiff has not plausibly alleged that Defendants violated a duty to disclose this information, or that Defendants intended to hide this information from Plaintiff in order to fraudulently induce Plaintiff to accept or continue his employment. See Dale v. L'Oreal USA, Inc., No. 22-CV-00427 (HG) (LB), 2023 WL 3984345, at *8-*9 (E.D.N.Y. June 13, 2023) ("When a Plaintiff's claim is based on a fraudulent omission of a material fact, rather than a materially false statement, in addition to scienter, reliance, and damages, there must be a showing that there was a fiduciary or confidential relationship between the parties that would impose a duty to disclose material information.") (internal citations and punctuation omitted).

Accordingly, Plaintiff's allegations regarding post-hire statement(s) (or omissions) fail to establish the requisite elements for fraudulent inducement and Count One of the Complaint must be dismissed.

ii. **Plaintiff Cannot Establish a Viable Claim for Negligent Misrepresentation**.

Here, Plaintiff cites nearly identical alleged examples of statements and conduct by Defendants in support of his Negligent Misrepresentation claim. The only additional allegation is that Defendants "misrepresented the financial health of the company, presented an optimistic future for the business, and misrepresented the mission of Sema4 in order to galvanize Plaintiff to toe the line." (Compare Complaint, ¶ 128(a)-(g) with Complaint, ¶ 142(a)-(h)). Defendant's alleged conduct does not rise to the level of negligent misrepresentation because: (1) Plaintiff does not even specify Defendant's exact alleged comment; (2) this example clearly references comments that would be considered statements of opinion or aspirational goals for future company performance; (3) Plaintiff has not alleged any facts to support that Defendants had a preconceived

and undisclosed intent of not improving company performance or following its own mission statement; and, (4) Plaintiff has not and cannot plead how or why his reliance on this alleged misrepresentation was reasonable or led to injury. Indeed, Plaintiff alleges that he became concerned about various alleged business practices of Defendants quite early on in his employment. (See, e.g., Complaint, ¶ 65 ("However, within six months of joining [Defendant], by April 2022, Plaintiff was fully aware that the majority of [Defendant]'s revenue from ECS testing was facing a significant threat due to concerns being raised by United Healthcare.")).

The remaining alleged conduct cited in support of Plaintiff's negligent misrepresentation claim is identical to the claims discussed in Section III(B)(i) supra. For the same reasons outlined therein, Plaintiff's allegations fall short of establishing that Defendants engaged in either fraudulent inducement or negligent misrepresentation. Specifically, the examples cited by Plaintiff either were not statements of fact, were not directed at Plaintiff or intended to induce specific action or misrepresent information that led to injury or were not reasonably relied upon by Plaintiff in light of his alleged early knowledge of information that contradicted the alleged statements he attributes to Defendants. Accordingly, Plaintiff's negligent misrepresentation claim must also be dismissed.

## III.    CONCLUSION

For the foregoing reasons, Counts One, Two, Four, Five, Ten, and Eleven of Plaintiff's Second Amended Complaint fail to state a legally cognizable claim. Therefore, Defendants' motion to dismiss should be GRANTED.

Respectfully submitted,


DEFENDANTS,
GENEDX HOLDINGS CORP., AND
SEMA4 OPCO, INC.


By: */s/ Caroline B. Park*
    Caroline B. Park (ct29049)
    cpark@wiggin.com
    John Cigno (ct30961)
    jcigno@wiggin.com
    **WIGGIN AND DANA LLP**
    One Century Tower
    265 Church Street
    New Haven, CT  06508
    P: (203) 498-4382
    F: (203) 782-2889


26871\31\4855-1106-8615.v8